**SCHOOL DISTRICT OF the CITY OF SAGINAW, MICHIGAN, a Public body corporate, Burneice Surles, Chester Surles, Kishna Brown, Eddie Brown, and Molly Rivera, for themselves, and on behalf of those similarly situated, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE, an Agency of the United States of America and National Science Foundation, an Agency of the United States of America, et al., Defendants.**

Civ. A. No. 76–10121.

United States District Court,
E. D. Michigan, N. D.

March 9, 1977.

Burton R. Shifman, Philip J. Goodman, Southfield, Mich., Bruce H. Mellinger, Saginaw, Mich., for plaintiffs.

Irving Jaffe, Dennis G. Linder, Elisa B. Vela, Dept. of Justice, Civ. Div., Washington, D.C., Haskell H. Shelton Jr., Asst. U.S. Atty., Bay City, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

### JAMES HARVEY, District Judge.

This suit is brought by plaintiffs seeking declaratory and injunctive relief to prohibit defendants from seeking to enforce Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq., on the grounds that defendants have not complied with the procedural requirements of 42 U.S.C. § 2000d–1. Plaintiffs also raise various constitutional issues.

Defendants have moved the Court for dismissal for lack of subject matter jurisdiction and, in the alternative, have moved for summary judgment in their favor. Defendants have moved also for dismissal of the named parents of school children on the grounds that such lack standing to bring this suit. Plaintiffs, in turn, have moved for preliminary injunctive relief and for summary judgment in their favor.

Title VI of the Civil Rights Act of 1964 is a statutory scheme displaying a Congressional intent to eliminate discrimination based on race, color, or national origin in any program which receives federal financial assistance. Under Section 602 of the Act, federal agencies are authorized to promulgate regulations which effectuate the non-discrimination purpose set forth in Section 601. The agencies are also authorized to initiate administrative proceedings after the agency has initially determined that a federally funded program is being administered discriminatorily and that compliance with the Act cannot be achieved through voluntary efforts. These administrative proceedings consist of an evidentiary hearing before an administrative law judge, who makes a finding of compliance or non-compliance, and administrative appeals. A final determination of non-compliance authorizes the agency to terminate federal funding, for the respective program involved, thirty days after the agency files a full written report with the appropriate Congressional committees.

Administrative proceedings have been initiated by the United States Department of Health, Education, and Welfare (HEW) and the National Science Foundation (NSF) in which it is alleged that the School District of the City of Saginaw, Michigan, is receiving federal financial assistance for programs in which there is discrimination in violation of Section 601 and implementing regulations 45 CFR 80 and 611. Plaintiffs do not challenge the merits of these allegations, as they properly recognize that the issue of compliance or non-compliance with Title VI can be determined initially only by the administrative agency. 42 U.S.C. § 2000d–1. Instead, plaintiffs urge the Court to enjoin the administrative procedures on the grounds that the agencies are proceeding in a manner which is unconstitutional and contrary to the provisions of Title VI.

Plaintiffs' first claim is that the initiation of the administrative enforcement proceedings is premature because defendants did not use good faith efforts to obtain voluntary compliance prior to initiating the administrative enforcement proceedings.

Title VI, at 42 U.S.C. § 2000d–1, prohibits the agency from initiating administrative enforcement proceedings until it has first determined that compliance cannot be obtained by voluntary means. Plaintiffs concede that HEW met and corresponded with the School District on many occasions in a period over a year and a half prior to beginning the administrative enforcement proceedings. It is plaintiffs' contention, though, that the quality of the efforts by HEW are not sufficient to fulfill its duties under the statute.

Plaintiffs assert that regardless of the sufficiency of HEW's efforts at obtaining voluntary compliance, NSF has clearly failed to meet this duty as it never met or corresponded with the School District prior to the initiation of the administrative proceedings. In response, NSF and HEW assert that NSF has validly delegated to HEW its authority to enforce Title VI, so that the actions of HEW must be considered also as the actions of NSF.

Plaintiffs raise three objections which are aimed directly at the procedures to be employed in the hearing before the Administrative Law Judge:

Plaintiffs assert that the regulations at 45 CFR 81, which set forth the practices for the hearings, decisions, and administrative review conducted by HEW, have not been approved by the President. Plaintiffs maintain that for this reason, HEW is proceeding illegally, because Section 602 of Title VI, 42 U.S.C. § 2000d–1, requires all rules and regulations to be approved by the President before they may become effective. In response to this claim, HEW asserts that these procedural rules were promulgated pursuant to the authority of the Secretary of HEW set forth at 5 U.S.C. § 301. HEW asserts that Title VI does not require Presidential approval of these regulations, as they are procedural only and do not define what constitutes discriminatory practices prohibited by Title VI.

Plaintiffs challenge the constitutionality of the procedures to be employed before the Administrative Law Judge.

Plaintiffs allege that the procedures before the Administrative Law Judge do not provide them with an adequate opportunity to be heard, in violation of the Due Process Clause of the Fifth Amendment, and that as the Administrative Law Judge has broad discretion, the possibility of idiosyncratic approaches to the conduct of the hearings deprive them of the right of Equal Protection of the laws.

In regards to plaintiffs' due process claim, plaintiffs assert that the regulations promulgated pursuant to Title VI, 45 CFR 80, 81, and 611, do not provide plaintiffs with an adequate opportunity to defend on the merits because there is no adequate discovery mechanism and no subpoena power to compel the attendance of witnesses. Plaintiffs also maintain that the selection procedures for the Administrative Law Judge are inherently biased, and that the great probability of bias in conjunction with the Administrative Law Judge's discretion, is very likely to result in injustice to plaintiffs. Plaintiffs assert that the possibility of harm to themselves is made more immediate because the Administrative Law Judge has ruled that interlocutory administrative appeals will not be permitted.

The third challenge to the procedures to be employed is that the implementing regulations and evidentiary procedures are not uniform throughout the United States as required by 42 U.S.C. § 2000d–6(a) and 20 U.S.C. § 1753. Plaintiffs do not assert in this regard that there have been enacted different regulations and procedures for various parts of the country. Rather, it is plaintiffs' claim that the regulations and procedures are so general and broad that they are susceptible of different application.

The final claim by plaintiffs is that the regulations enacted to implement the non-discrimination mandate of Title VI are unconstitutionally vague, as a person of ordinary intelligence could not determine from them precisely what is required to obtain compliance.

The threshold question in this as in every case is whether this Court has jurisdiction.

F.R.Civ.P. 12(b)(1). If it does not, then plaintiffs' complaint must be dismissed, without regard to the merits of their claims.

In enacting Title VI of the Civil Rights Act of 1964, Congress did not provide for any jurisdiction in the United States District Courts. Instead, the statute provides for administrative procedures, with review of those administrative procedures to be conducted in the Court of Appeals under Section 603 of the Act, 42 U.S.C. § 2000d–2.

Plaintiffs seek to avoid the jurisdictional scheme of Title VI by asserting that this Court should assume jurisdiction under 28 U.S.C. § 1331(a), which sets forth the general grant of jurisdiction in the District Court over suits involving a federal question. This statute, as recently amended to remove the amount in controversy requirement in suits against an agency of the United States, Pub.L. 94–574, 90 Stat. 2721 (October 21, 1976), provides for original subject matter jurisdiction for actions involving constitutional questions or the construction of a federal statute.

28 U.S.C. § 1331(a) does not in general authorize the District Court to intervene in administrative proceedings whenever an issue is raised which bears on the Constitution or a statute of the United States. Instead, a party to an administrative proceeding is generally precluded from seeking either judicial review or judicial intervention until such party has first exhausted his administrative remedies. In the context of Title VI, the exhaustion requirement means that plaintiffs must participate in the administrative process and present their claims eventually to the Court of Appeals.

The reasons behind the exhaustion requirement are not difficult to understand. First, where Congress has determined that an agency is to possess certain powers exclusively, the Court is obliged to respect the autonomy of the agency and its discretion within the bounds established by Congress. Secondly, the Courts are obliged to refrain from premature interference in the administrative process. As this Court stated in a similar case, *Board of Education of School District of City of Flint v. United States Department of Health, Education and Welfare,* # 76–40098 (ED Mi, 9/30/76) at p. 3:

"The policy behind the doctrine of exhaustion of administrative remedies is well established and based upon the court's deference to the specialized experience and competency of the administrative agency. As the court in *Wolf Corp. v. SEC* [115 U.S.App.D.C. 75] 317 F.2d 139 (1963) stated:

'To exert judicial power to stop processes . . . which can always be judicially reviewed when the story is fully told and recorded is an extraordinary step . . .'"

See also *McKart v. United States,* 395 U.S. 185, 193–194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

Plaintiffs clearly have not exhausted their administrative remedies. To the contrary, they seek to have the Court enjoin the administrative process itself prior to any evidentiary hearing before the Administrative Law Judge and without recourse to the established appeals procedures.

Plaintiffs concede that the exhaustion doctrine generally precludes access to the courts until a party has unsuccessfully sought to obtain relief under all existing administrative procedures. However, although conceding that this is the general rule, plaintiffs assert that they come within an exception because they are challenging the legality of the administrative procedures and the agency's authority to act. Plaintiffs reason that the exhaustion requirement is inapplicable under these circumstances, as only the courts have the expertise to rule upon the legality of agency action and as it would be unrealistic to expect an agency to invalidate its own procedures. Plaintiffs assert that review in the Court of Appeals is not adequate to preserve their rights, as they may suffer a discontinuance of federal funding prior to such judicial review. Plaintiffs also point to the onerous burden of having to engage

in the administrative proceedings at all and the harm that occurs by the deferral of applications for increased funding pending the resolution of their dispute with HEW and NSF.

For these reasons, plaintiffs maintain that the Court has jurisdiction notwithstanding the exhaustion requirement. Plaintiffs urge the Court to rule on the legality of the agencies' actions and procedures and, if it finds any of such to be illegal, to enjoin HEW and NSF from proceeding further with the scheduled administrative proceedings.

■ The exhaustion requirement precludes resort to the courts in the face of available administrative procedures unless the administrative procedures are incapable of providing relief. For example, where a party has already been adversely affected by administrative action and all that remains to be determined is a constitutional issue, the parties may resort directly to the courts, as only the courts are capable of determining the issue. See *Weinberger v. Salfi, supra* ; *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Califano v. Sanders*, —— U.S. ——, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *McGrath v. Weinberger*, 541 F.2d 249 (CA 10, 1976); *Martinez v. Richardson*, 472 F.2d 1121 (CA 10, 1973); *Francois v. Bushell*, 325 F.Supp. 531 (N.D.Cal., 1971), aff'd on other grounds, 500 F.2d 591 (CA 9, 1974); *Finnerty v. Cowen*, 508 F.2d 979 (CA 2, 1974).

■ Initially, it can be stated that the administrative procedures appear clearly capable to granting relief on two of the issues raised by plaintiffs. First, the question of whether defendants used good faith efforts to obtain voluntary compliance with Title VI is an issue capable of being resolved initially in the administrative process. Thus far, though, the Administrative Law Judge in a preliminary ruling has concluded that the issue is a factual matter which can be determined only after an evidentiary hearing. By seeking to avoid an evidentiary hearing (in their request to have all further administrative proceedings enjoined), plaintiffs are rejecting an administrative opportunity to litigate the issue. This is precisely the opposite of what the exhaustion doctrine requires.

■ Likewise, it appears that the administrative procedures allow plaintiffs to litigate the issue of the propriety of NSF's participation in the enforcement proceedings. Accordingly, plaintiffs must pursue those administrative remedies prior to resort to the courts.

■ More generally, as intervention in administrative proceedings is considered an extraordinary remedy, it is incumbent upon plaintiffs to demonstrate a compelling need for judicial intervention. Plaintiffs have not established any such immediate need. Thus far, they have been required only to demand an administrative hearing and have suffered only the deferral of applications for increased funding.[1] These are mere preliminary matters which do not entitle plaintiffs to judicial intervention absent an obvious or flagrant violation of plaintiffs' rights. *Taylor v. Cohen*, 405 F.2d 277 (CA 4, 1968); *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). The Court finds no such obvious or flagrant violation. Rather, the issues raised by plaintiffs are arguable as opposed to a clear violation of a statutory limitation.

■ Likewise, plaintiffs have shown no harm from the alleged defective procedures. They have neither claimed specific prejudice nor that they will be subject to specific prejudice in proving their case. As the procedures appear adequate, if fairly applied, the Court cannot conclude that plaintiffs should not be required to participate in the administrative proceedings because of a possibility that unfairness may develop. As the Supreme Court stated in *Yakus v. United States*, 321 U.S. 414, 435, 64 S.Ct. 660, 672, 88 L.Ed. 834 (1944):

---

1. Plaintiffs' applications for increased funding were deferred temporarily but are not at present deferred.

**154**

"Only if we could say in advance of resort to the statutory procedure that it is *incapable of* affording due process to petitioners could we conclude that they have shown any legal excuse for their failure to resort to it or that their constitutional rights have been or will be infringed." (emphasis added)

 It is also settled law that the mere presence of a constitutional issue does not excuse the exhaustion requirement where, as here, there are other issues in controversy. The constitutional issues can be preserved in the administrative proceedings so that they may be raised before the appeals court. *Yakus v. United States, supra*, 321 U.S. at 437, 64 S.Ct. 660. Requiring exhaustion is preferred in order that the reviewing court may have the benefit of a factual record in which the issue is fully developed and clearly defined as opposed to being presented in a vacuum. *Lance Roofing Co. v. Hodgson*, 343 F.Supp. 685 (N.D.Ga., 1972), three judge court, affirmed, 409 U.S. 1070, 93 S.Ct. 679, 34 L.Ed.2d 659 (1973); *Wallace v. Lynn*, 165 U.S.App.D.C. 363, 507 F.2d 1186 (1974).

 The Court also is unable to conclude that plaintiffs will suffer irreparable harm if they are required to present their constitutional claims to the courts following completion of the administrative proceedings. Before any agency decision to terminate funds can become effective, plaintiffs will be able to seek judicial review as provided for in Title VI. See 42 U.S.C. § 2000d–2; 45 CFR 81.104–106. Under Title 5 of the United States Code, Section 705, the reviewing court has the power to postpone further the date of termination of funding if such a postponement is required to avoid harm to plaintiffs.

 Thus, plaintiffs' rights and the *status quo* can be sufficiently protected by following the statutory procedure for review under Title VI. The only harm which plaintiffs may suffer as a result of following the statutory procedure are their litigation expenses. This, however, has been held to be an insufficient basis for judicial intervention in the administrative process.

The United States Supreme Court stated in *Renegotiation Board v. Bannercraft Clothing Company*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974):

> "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury. Without a clear showing of irreparable injury, failure to exhaust administrative remedies serves as a bar to judicial intervention into the agency process." (citations omitted)

 In summary, the Department of Health, Education and Welfare and NSF have commenced administrative proceedings to enforce the provisions of Title VI, which require that there be no discrimination in programs receiving federal funding. The school district and parents of school children seek to have the District Court intervene and halt these proceedings. Title VI, however, contemplates that the administrative proceedings will continue uninterrupted and that judicial review will occur only in the Court of Appeals.

In order to get outside of the statutory scheme of Title VI and have this Court intervene, plaintiffs must demonstrate a clear and compelling need for immediate judicial intervention. This plaintiffs have not done.

First, plaintiffs have not shown such a clear violation of their rights as would establish a need for immediate judicial intervention. Instead, any harm to plaintiffs is de minimis and conjectural only, as federal funding has not been discontinued.

Secondly, plaintiffs may prevail in the administrative process, either on their claim that the administrative enforcement proceedings are premature or on the ultimate question of whether the School District is in compliance with Title VI. If plaintiffs prevail, there would obviously be no need for judicial relief as federal funding would be continued.

Third, if plaintiffs do not prevail, they have the right to seek judicial review in the Court of Appeals before the decision to terminate funds becomes effective. Title

VI provides that the Court of Appeals has jurisdiction to consider all of the issues raised by plaintiffs, and it, thus, can take whatever measures are then necessary to safeguard plaintiffs' rights.

The availability of either potentially adequate administrative remedies or judicial review under the statute precludes this Court from acquiring jurisdiction. *Renegotiation Board v. Bannercraft Clothing Co., supra* ; *Taylor v. Cohen, supra* ; *Ogden v. Department of Transportation*, 430 F.2d 660, 662 (CA 6, 1970); *Sink v. Morton*, 529 F.2d 601 (CA 4, 1975). Both remain available to plaintiffs in this case.

Accordingly, the Court finds it has no jurisdiction and cannot intervene in the administrative proceedings. While this decision makes it unnecessary to rule on the other issues raised, the Court notes that plaintiffs' failure to exhaust administrative remedies would also preclude any relief from this Court even if it had jurisdiction. *Wallace v. Lynn, supra.*

The motion by plaintiffs for a preliminary injunction is DENIED, defendant's motion to dismiss for lack of jurisdiction is hereby GRANTED, and the Complaint is DISMISSED pursuant to F.R.Civ.P. 12(b)(1).

IT IS SO ORDERED.